# STATE OF MICHIGAN

# COURT OF APPEALS

---

In re ESTATE OF CHARLOTTE WETSMAN.

---

STEPHEN SHEFMAN,

      Appellant,

v

THOMAS BRENNAN FRASER, Special
Fiduciary, JUDITH GAIL SILBERMAN, and
PETER SHEFMAN,

      Intervenors,

and

MILLER CANFIELD PADDOCK AND STONE,
PLC,

      Appellee.

UNPUBLISHED
August 24, 2017

No. 330990
Oakland Probate Court
LC No. 2007-309955-DE

---

In re CHARLOTTE WETSMAN TRUST.

---

STEPHEN ERIC SHEFMAN,

      Appellant,

v

PETER ELLIOTT SHEFMAN, JUDITH GAIL
SILBERMAN, and THOMAS BRENNAN
FRASER,

      Intervenors,

and

No. 330992
Oakland Probate Court
LC No. 2009-324688-TV

-1-

MILLER CANFIELD PADDOCK AND STONE,
PLC,

        Appellee.

_____

Before: SAAD, P.J., and SERVITTO and STEPHENS, JJ.

PER CURIAM.

      Appellant Stephen Shefman ("Shefman") appeals as of right the probate court's orders entered in cases involving his deceased mother's trust and estate. The orders denied Shefman's motion for reconsideration of the probate court's July 28, 2015 orders awarding appellee Miller, Canfield, Paddock, and Stone, PLC ("Miller Canfield") sanctions against Shefman under MCR 2.114(D) and (E), in the amount of $20,731.80, to compensate Miller Canfield for the time spent by one of its attorneys, Richard Siriani, in responding to Shefman's frivolous claims denying liability for Miller Canfield's attorney fees. We affirm.

## I. BACKGROUND

      Shefman served as personal representative of his mother's estate until he was removed in 2009. While serving as personal representative, Shefman, an attorney himself, hired attorney Siriani of the Miller Canfield law firm, to provide legal representation in connection with the estate proceedings. In 2009, Shefman sought court approval of his first annual account as personal representative. His sister filed objections to the estate paying Siriani's attorney fees, arguing that most of the work performed by Siriani was for Shefman's personal benefit in relation to his disputes with his siblings, and did not benefit the estate. In May 2009, after conducting an evidentiary hearing, the probate court agreed that the estate was not responsible for most of Siriani's attorney fees because "Siriani's work was performed on behalf of Stephen Shefman" and his services did not benefit the estate.[1] Although the court found that Siriani's requested attorney fees and costs of $108,467.76 were reasonable, it entered an order disallowing those fees and costs as a charge against the estate.[2]

---

[1] The probate court identified what it considered to be the "four main issues" in the probate proceedings, which were (1) issues related to a claim that Shefman's conduct unduly influenced his mother, (2) Shefman's claim that various bank accounts were rightfully his and not part of the estate; (3) Shefman's claim to various pieces of artwork, which he maintained had been gifted to him and were not part of the estate, and (4) arguments that estate assets should not be used to support Shefman's defense against the foregoing allegations.

[2] This Court affirmed that decision in *In re Estate of Charlotte Wetsman*, unpublished opinion per curiam of the Court of Appeals, issued September 20, 2012 (Docket Nos. 292350, 292738, 294961, 296365, 301355, 301356) ("*Wetsman I*"); slip op at 11.

Siriani's firm, Miller Canfield, thereafter pursued recovery of Siriani's fees from Shefman individually. In particular, it filed a motion for summary disposition regarding Shefman's personal liability for the attorney fees, and it filed a petition for a charging lien against Shefman's share of the proceeds from his mother's trust. In May 2013, the probate court ruled that Shefman was personally liable for the attorney fees and that Miller Canfield was entitled to a charging lien against the trust proceeds. Accordingly, the court ordered the successor trustee to withhold distribution of Shefman's share of the trust proceeds until the attorney fees were paid. The probate court also ruled that Shefman's efforts to contest his personal liability for the attorney fees were frivolous, and it awarded Miller Canfield sanctions in the amount of $20,731.80, representing Siriani's attorney fees for having to respond to Shefman's frivolous claims.

In a prior appeal, this Court held that the probate court erred in entering a charging lien against Shefman's share of the trust proceeds because Siriani's work did not secure Shefman's right to any of the trust proceeds, given that Siriani represented Shefman only in the estate proceedings. Because Siriani's efforts did not create or add to the trust funds available for distribution, this Court reversed the portion of the probate court May 2013 orders imposing an attorney charging lien and requiring the successor trustee to pay Miller Canfield's invoices from Shefman's share of the trust proceeds. *In re Estate of Charlotte Wetsman*, unpublished opinion per curiam of the Court of Appeals, issued December 23, 2014 (Docket Nos. 317081, 317085) ("*Wetsman II*"); slip op at 4. This Court also considered the trial court's award of sanctions to Miller Canfield. This Court stated that it "empathize[d] with the probate court's determination that Shefman's challenges to the imposition of attorney fees against him was frivolous," but it observed that Miller Canfield sought compensation through an attorney charging lien, and that it had reversed the orders imposing a charging lien against Shefman's share of the trust assets. *Id.*, slip op at 10. This Court also stated that the probate court "made no real findings under MCR 2.114." *Id.* Therefore, this Court vacated the award of sanctions and remanded for reconsideration of the sanction issue. *Id.*

On remand, after conducting additional hearings on the issue of sanctions, the probate court issued a decision setting forth in detail how Shefman had violated MCR 2.114(D), and it awarded Miller Canfield an "appropriate sanction" under MCR 2.114(E) in the amount of $20,731.80, representing the value of Siriani's time to Miller Canfield in responding to Shefman's frivolous claims. Shefman now appeals that decision.

## II. GROUNDS FOR SANCTIONS UNDER MCR 2.114(D)

Shefman first argues that the probate court erred in finding that he violated MCR 2.114(D) and that sanctions were therefore warranted under MCR 2.114(E). We disagree.

The imposition of a sanction under MCR 2.114 is mandatory upon a finding that a pleading was signed in violation of the court rule, or that a frivolous action or defense has been pleaded. *Contel Sys Corp v Gores*, 183 Mich App 706, 710-711; 455 NW2d 398 (1990). We review a trial court's finding that an action is frivolous, and its decision to award sanctions under MCR 2.114, for clear error. *Kitchen v Kitchen*, 465 Mich 654, 661; 641 NW2d 245 (2002); *Guerrero v Smith*, 280 Mich App 647, 677-678; 761 NW2d 723 (2008). A decision is clearly

erroneous when, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made. *Kitchen*, 465 Mich at 661-662.

Pursuant to MCR 5.114(A)(1), the provisions of MCR 2.114, regarding the signing of papers, generally apply in probate proceedings. MCR 2.114 provides, in relevant part:

> **(A) Applicability.** This rule applies to all pleadings, motions, affidavits, and other papers provided for by these rules. See MCR 2.113(A). In this rule, the term "document" refers to all such papers.
>
> * * *
>
> **(D) Effect of Signature.** The signature of an attorney or party, whether or not the party is represented by an attorney, constitutes a certification by the signer that
>
> (1) he or she has read the document;
>
> (2) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and
>
> (3) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
>
> **(E) Sanctions for Violation**. If a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees. The court may not assess punitive damages.

An attorney or a party is under an affirmative duty, pursuant to MCR 2.114(D), to conduct a reasonable inquiry into both the factual and legal viability of a pleading before it is signed. *LaRose Market, Inc v Sylvan Ctr, Inc*, 209 Mich App 201, 210; 530 NW2d 505 (1995). "The reasonableness of the inquiry is determined by an objective standard and depends on the particular facts and circumstances of the case." *Id*. In order to impose sanctions under MCR 2.114(E), the moving party need only show that the opposing party violated one of the requirements of MCR 2.114(D). See *Guerrero*, 280 Mich App at 678. As this Court explained in *Sprenger v Bickle*, 307 Mich App 411, 423-424 n 6; 861 NW2d 52 (2014):

> The question whether a claim is frivolous is evaluated at the time the claim was raised. *In re Costs & Attorney Fees*, 250 Mich App 89, 94; 645 NW2d 697 (2002). The objective of sanctions "is to deter parties and attorneys from filing documents or asserting claims and defenses that have not been sufficiently investigated and researched or that are intended to serve an improper purpose." *FMB-First Mich Bank v Bailey*, 232 Mich App 711, 723; 591 NW2d 676 (1998).

-4-

Sanction provisions should not be construed in a manner that has a chilling effect on advocacy, that prevents a party from bringing a difficult case, or that penalizes a party whose claim initially appears viable but later becomes unpersuasive. *Louya v William Beaumont Hosp*, 190 Mich App 151, 163; 475 NW2d 434 (1991).

It is apparent from the probate court's decision on remand that it was well aware of the requirements of MCR 2.114(D), and the circumstances under which sanctions could be imposed under MCR 2.114(E). The court cited the requirements of the court rule, including that the rule requires the filing of documents or other papers, and it referenced specific documents filed by Shefman that it concluded asserted frivolous claims, defenses, or arguments as part of Shefman's effort to contest his personal liability for Siriani's attorney fees. Despite that the probate court had clearly determined in 2009 that Siriani's work was performed on behalf of Shefman individually, and therefore Shefman was not entitled to charge Siriani's attorney fees to the estate, Shefman continued to deny his personal liability for Siriani's attorney fees in multiple court filings. In addition, the probate court had explicitly told Shefman that he was not to engage in discovery related to Siriani's representation unless he could demonstrate a need for discovery at a future evidentiary hearing. Despite these warnings, Shefman filed multiple discovery requests, which eventually led to the court granting Miller Canfield's motion for a protective order.

On appeal, Shefman raises specific challenges to the probate court's determination that he violated MCR 2.114(D). After analyzing those arguments, we find no clear error in the probate court's decision.

A. SHEFMAN'S PERSONAL LIABILITY FOR MILLER CANFIELD'S ATTORNEY FEES

Shefman argues that the probate court never found that he signed any document in which he argued that no one was liable for Miller Canfield's fees. This argument is without merit because the probate court specifically found that "Shefman filed several pleadings, incorporating his argument, that Mr. Siriani was not entitled to be paid by anyone." The court read into the record specific portions of Shefman's first response to Miller Canfield's petition to recover its fees, paragraph by paragraph, to support its conclusion that Shefman violated MCR 2.114(D). Indeed, the court had previously warned Shefman that he would be subjecting himself to sanctions for making frivolous arguments contesting Miller Canfield's right to recover its attorney fees and Shefman's personal liability for those fees.

Although Shefman may not have expressly stated in a pleading that no one was liable for Miller Canfield's fees, the probate court accurately found that Shefman continued to assert that he was not personally liable for the attorney fees, despite the court's explicit finding that Siriani's work was performed on behalf of Shefman personally, and therefore his attorney fees could not be charged to the estate. Because Shefman hired Siriani, and Siriani's services were performed for Shefman's personal benefit, it follows that Shefman was liable for Siriani's fees. This conclusion is supported by this Court's decision in *In re Nestorovski Estate*, 283 Mich App 177, 204; 769 NW2d 720 (2009), in which this Court recognized that where an estate fiduciary is responsible for unnecessary litigation, the fiduciary, rather than the estate, is liable for the attorney fees incurred in that litigation. In this case, the probate court had previously found that

Shefman used Siriani to advance Shefman's own personal interests, and not the estate's interests; therefore, Shefman, rather than the estate, was liable for Siriani's fees.

By continuing to dispute his personal liability for Siriani's attorney fees, for services that the probate court had previously found benefitted Shefman personally and could not be charged to the estate (a decision that this Court affirmed in *Wetsman I*, unpub op at 11), Shefman advanced the frivolous position that no one should be liable for Siriani's attorney fees.

## B. SHEFMAN'S RIGHT TO RETAIN COUNSEL AS PERSONAL REPRESENTATIVE

Shefman argues that because he was acting in his capacity as personal representative of the estate when he hired Siriani the probate court erred in finding that he raised a frivolous defense by arguing that he was not personally liable for Siriani's attorney fees. Shefman properly observes that, as personal representative, he was authorized to retain counsel to represent the estate and to charge counsel's fees to the estate. See MCL 700.3715(w), MCL 700.3808, and MCR 5.313(B). However, at the evidentiary hearing in 2009, the probate court found that Siriani's representation was for Shefman's personal benefit, not the benefit of the estate. Thus, even though Shefman had the right to retain counsel for the benefit of the estate, the probate court found that he did not actually do so and instead utilized Siriani's representation to advance his own claims against his siblings. Given this finding in 2009, it was frivolous for Shefman to continue to argue that his status as personal representative of the estate precluded him from being personally liable for Siriani's attorney fees.

## C. SHEFMAN'S LIABILITY FOR SIRIANI'S FEES

Shefman contends that his arguments were not frivolous because there is no legal authority recognizing that, as a fiduciary of the estate, he may be held personally liable for Siriani's attorney fees. He also complains that Siriani did not warn him that he could be personally liable for those fees if they were not paid by the estate. Shefman also appears to argue that he did not have notice that he could be held personally liable for the fees, given the absence of legal authority supporting his personal liability or any such advice from Siriani. This argument is compelling only to the extent that Shefman actually retained Siriani for the estate's benefit. Given the probate court's previous express finding that Siriani's representation did not benefit the estate, but instead was deigned to benefit Siriani individually, and thus the attorney fees could not be charged to the estate, it was frivolous for Shefman to continue to argue that there was no legal authority supporting his personal liability for the attorney fees (see *In re Nestorovski Estate*, 283 Mich App at 204), or that he lacked notice of his personal liability. Indeed, as an attorney it was disingenuous for Shefman to argue that he was unaware that he could be held personally liable for legal services that benefitted him personally, and did not benefit the estate.

## D. SHEFMAN'S BELIEF THAT HE WAS NOT PERSONALLY LIABLE

Shefman argues that the probate court erred in assessing sanctions for his conduct in continually advancing the position that he was not personally liable for Siriani's attorney fees because, at the time he made those arguments, he believed them to be true. Shefman is correct that a determination whether a claim is frivolous, such that sanctions may be warranted under

MCR 2.114(D), must be based on the circumstances as they existed at the time a claim is asserted. *Sprenger*, 307 Mich App at 423 n 6. However, the probate court did not clearly err in finding that Shefman had no reasonable basis for believing that he was not personally liable for Siriani's attorney fees after the court had conducted an evidentiary hearing and found that Siriani's fees could not be charged to the estate because Siriani's work only benefitted Shefman individually. Even if Shefman may have reasonably believed in 2009 that he was not personally liable for Siriani's fees, that was clearly dispelled once the probate court issued its decision in May 2009. At that point, Shefman should have known that he was personally liable for those fees, yet he continued to advance the frivolous position that he was not personally liable for the fees.

### E. SHEFMAN'S ATTEMPTS TO CONDUCT DISCOVERY

The probate court further found that Shefman's continuous efforts to pursue discovery related to Siriani's representation were frivolous because the court had previously informed Shefman that discovery would not be permitted. Despite those warnings, Shefman submitted requests for production of documents, served a notice of deposition on Siriani, and then filed a motion to compel the deposition. The probate court did not clearly err in finding that Shefman's repeated filings in pursuit of discovery, after the court had ruled that discovery would not be allowed, were frivolous, thereby supporting an award of sanctions under MCR 2.114(E).

For the foregoing reasons, the probate court did not clearly err in finding that Shefman violated MCR 2.114(D).

### III. AN "APPROPRIATE SANCTION" UNDER MCR 2.114(E)

Next, Shefman argues that even if he violated MCR 2.114(D), the probate court erred in awarding Miller Canfield sanctions under MCR 2.114(E) in an amount equivalent to Siriani's attorney fees because Miller Canfield did not retain separate counsel but instead used its own employee, Siriani, to represent it in the proceedings to recover its attorney fees.

The determination of an appropriate sanction for a violation of MCR 2.114(D) is within the trial court's discretion, and accordingly, is reviewed for an abuse of discretion. *FMB-First Mich Bank*, 232 Mich App at 726-727. But whether the probate court had the authority under MCR 2.114(E) to award Miller Canfield a sanction equivalent to the value of Siriani's time in responding to Shefman's frivolous claims is primarily a question of law, which we review de novo. *Id.* at 719.

Preliminarily, we reject Miller Canfield's claim that the probate court should not have even considered this argument because Shefman did not raise it before *Wetsman II* was decided and because this Court remanded the case for reconsideration of the sanction issue. In general, when a case is remanded for further proceedings in the trial court, the trial court may not exceed the scope of the remand order. *Int'l Business Machines, Corp v Dep't of Treasury*, 316 Mich App 346, 350; 891 NW2d 880 (2016). In *Wetsman II*, this Court remanded the case to the probate court for reconsideration of the sanction issue under MCR 2.114, but did not otherwise address the legal argument whether Miller Canfield's use of its own attorney to recover its attorney fees prohibited an award of sanctions. *Wetsman II*, unpub op at 10. Because this Court

did not expressly decide that issue, and remanded for reconsideration of the sanction issue without specifically stating that sanctions could or could not be awarded, we conclude that Shefman was not foreclosed from raising any challenge to the availability of sanctions, and likewise, Miller Canfield was not foreclosed from presenting any argument in support of its request for sanctions. The probate court's consideration of arguments both for and against an award of sanctions was not inconsistent with this Court's directive on remand to reconsider the issue of sanctions. Accordingly, this Court, like the probate court, properly may consider Shefman's argument. However, we are not persuaded that the probate court erred in its award of sanctions to Miller Canfield.

MCR 2.114(E) provides that after a court finds that a party has signed a document in violation of MCR 2.114(D), the court "shall impose upon the person who signed it, a represented party, or both, *an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees.*" (Emphasis added.) A reading of the emphasized language leads to two conclusions: (1) an appropriate sanction under MCR 2.114(E) should consist of the other party's "reasonable expenses incurred because of the filing of the document" that violated MCR 2.114(D); and (2) an "appropriate sanction" *may* include, but need not be limited to, reasonable attorney fees. MCR 2.114(E) also prohibits a court from assessing punitive damages.

On remand, Shefman relied on *FMB-First Mich Bank*, 232 Mich App at 711, to argue that the probate court could not award attorney fees to a pro se party because there is no actual attorney-client relationship. Shefman further argued that Miller Canfield should be considered a pro se party in this case because it was represented by its own employee in its efforts to recover its attorney fees. The probate court agreed with Shefman that it could not award Miller Canfield attorney fees as a sanction or impose punitive damages. It reasoned, however, that it could consider the value of Siriani's time to Miller Canfield to determine an appropriate sanction and that this methodology is not prohibited by *FMB-First Mich Bank*. It concluded that such an award would be consistent with the purpose of MCR 2.114 by discouraging frivolous litigation. The court noted that, as a probate court, it sees many pro se litigants, and that MCR 2.114 would be rendered meaningless in many cases if parties who represent themselves could not be compensated for their time in responding to frivolous matters. The probate court awarded Miller Canfield "an appropriate sanction" in an amount equivalent to the amount of Siriani's attorney fees, $20,731, reasoning that this amount represented the value of Siriani's time to Miller Canfield.

In *FMB-First Mich Bank*, 232 Mich App at 719, the trial court awarded the third-party defendants, an attorney and a law firm, sanctions under MCR 2.114 including attorney fees. This Court ruled that a pro se litigant does not actually incur attorney fees, even if that party is an attorney, by reason of appearing on his own behalf in the proceeding. This Court noted that an "attorney" is someone who acts as an agent or substitute on behalf of a party. Because a litigant who appears *in propria persona* is representing himself, and thus is not represented by an attorney, it is not possible for that party to incur attorney fees. *Id.* at 726. Therefore, to the extent that MCR 2.114 allows for the recovery of attorney fees, such fees may not be awarded to pro se litigants. However, this Court in *FMB-First Mich Bank*, 232 Mich App at 726-728, further stated:

However, our analysis does not end here. MCR 2.114(E) says that if a document is signed in violation of the signature rule, "the court . . . shall impose upon the person who signed it . . . an *appropriate sanction, which may include . . .* the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees." Therefore, MCR 2.114(E) does not restrict the sanction to expenses or costs incurred. Rather, it gives the trial court discretion to fashion another appropriate sanction. In contrast, MCL 600.2591 . . . , incorporated by reference in MCR 2.114(F), provides that the trial court "shall award to the prevailing party the costs and fees incurred," without giving the trial court discretion to fashion another appropriate sanction.

Because any sanction awarded under MCR 2.114(F) is restricted to the costs and fees as described in MCL 600.2591(2) . . . , we hold that attorney fee sanctions are not available under MCR 2.114(F). In contrast, MCR 2.114(E) grants the trial court discretion to fashion an "appropriate sanction," which may include, but is not limited to, an order to pay the opposing party the reasonable expenses incurred (including attorney fees). Of course, the "appropriate sanction" may not include punitive damages under either subparagraph. MCR 2.114(E).

We therefore vacate those portions of the sanctions orders awarding attorney fees to in propria persona third-party defendants Koetje and S, B & P. Because the record does not indicate what amount of the sanctions awards constitute the reasonable attorney fees, we remand the case to the trial court to recalculate the sanctions awarded to Koetje and S, B & P after deducting the attorney fee awards. We also remand for findings regarding whether the trial court's sanctions were awarded under MCR 2.114(E) or (F). If the sanctions were awarded under subrule E, the trial court may fashion an "appropriate sanction" within the discretion afforded by that subrule. If, however, sanctions were awarded under subparagraph F, the trial court's sanction is limited to the terms of MCL 600.2591 . . . . [Footnote omitted.]

In this case, the probate court was very clear in stating that it was awarding what it determined was an "appropriate sanction" under MCR 2.114(E), as opposed to attorney fees under MCR 2.114(F).

Shefman relies on two Supreme Court decisions in support of his argument that such an award was not permissible, but those cases are distinguishable because they do not involve an award of sanctions under MCR 2.114(E). In *Fraser Trebilcock Davis & Dunlap, PC v Boyce Trust 2350*, 497 Mich 265; 870 NW2d 494 (2015), the Court ruled that a trial court's authority to award a "reasonable attorney fee" under MCR 2.403(O)(6)(b) did not allow the court to award attorney fees to a pro se litigant. In that case, the law firm requested a reasonable attorney fee for services performed by its member lawyers as part of an award of case evaluation sanctions. The Court ruled that MCR 2.403(O)(1) only permits a party to recover "actual costs," which are defined under MCR 2.403(O)(6)(b) to include "a reasonable attorney fee based on a reasonable hourly or daily rate . . . ." *Fraser Trebilcock*, 497 Mich at 271-272. The Court held that attorney fees could not be awarded as actual costs when there was no attorney-client relationship. *Id*. at 273-280. Similarly, in *Omdahl v West Iron Co Bd of Ed*, 478 Mich 423, 432; 733 NW2d 380

(2007), the Court held that MCL 15.271(4) did not permit a pro se litigant to recover attorney fees under the Open Meetings Act, because that statute provides for the recovery of "court costs and actual attorney fees for the action."

As explained in *FMB-First Mich Bank*, MCR 2.114(E) requires the trial court to determine "an appropriate sanction," consisting of a party's "reasonable expenses" for responding to a frivolous claim, which can include, but is not limited to, reasonable attorney fees. Instead, a trial court has discretion to fashion an appropriate award to compensate a pro se litigant for that party's time spent responding to frivolous claims. The probate court was aware of this distinction but found that the fees Siriani would have charged for responding to Shefman's frivolous claims was an appropriate measure of the "reasonable expense incurred" by Miller Canfield for responding to Shefman's frivolous claims. Even though Miller Canfield never hired its own counsel and, therefore, never directly incurred any actual attorney fees, it did produce records showing that Siriani (and other staff) devoted a significant number of hours in responding to Shefman's frivolous arguments. The time Siriani spent responding to Shefman's frivolous arguments prevented him from doing work for other clients, depriving Miller Canfield of the opportunity to collect fees from other clients. The probate court did not err in looking at the value of Siriani's lost time to Miller Canfield to fashion an "appropriate sanction" for Shefman's violation of MCR 2.114(D).

Shefman also argues that the probate court's award was improperly intended to punish him for doing nothing more than challenging Miller Canfield's attempts to collect its fees. There is no merit to this argument. Although MCR 2.114(E) prohibits a court from assessing punitive damages, it is clear from the probate court's decision that its determination of an appropriate sanction was intended to compensate Miller Canfield for the value of Siriani's lost time to Miller Canfield in responding to Shefman's frivolous claims. The award was compensatory, not punitive.

Affirmed.


/s/ Henry William Saad
/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens

-10-